2023 IL App (2d) 220014-U
No. 2-22-0014
Order filed February 21, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 21 CM 199 |
| ASHAUNTI POWELL, | ) ) ) | Honorable Marnie M. Slavin, |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE McLAREN delivered the judgment of the court.
Justices Schostok and Hudson concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Trial court did not err in entering guilty verdict where rational juror could have found the essential elements of theft beyond a reasonable doubt; court did not abuse its discretion in denying admission of cumulative and misleading defense exhibit; trial court's restitution award was not an abuse of discretion. Affirmed.

¶ 2    Defendant, Ashaunti Powell, was charged with theft in violation of 720 ILCS 5/16-1(a)(1)(A) (West 2020), in that she knowingly obtained or exerted unauthorized control over a cell phone belonging to Dwayne Jenkins and having less than $500 value. Powell was found guilty following a jury trial, and sentenced to a year of supervision, which included the conditions that she pay $75 in fines and $600 in restitution, and perform 30 hours of public service. Powell

appeals, arguing that she was not proven guilty beyond a reasonable doubt and that the trial court erred in denying the admission of a defense exhibit and in ordering defendant to pay $600 in restitution. For the reasons that follow we affirm the judgment of the circuit court.

¶ 3                                  I. BACKGROUND

¶ 4     Before testimony began at trial, the jury was advised of the parties' stipulation that the subject cell phone's number was registered to Powell.

¶ 5     Jenkins, who is sixty years old, testified that on June 19, 2020, he was at home with his two children, his girlfriend, Dominique, and her friend, defendant Ashaunti Powell. He had been having difficulty with the internet and Boost Mobile that evening. About a half an hour after his girlfriend and Powell arrived, he called Boost Mobile on his speaker phone and gave them his PIN number. Subsequently, he was notified that a cell phone had been purchased on his Boost Mobile account. The phone was purchased between June 19 and June 24 and delivered via Fed Ex to an address belonging to Powell.

¶ 6     On July 2, 2020, Jenkins texted Powell asking what she was going to do about the phone. She responded that she was not going "to pay no phone off," the bill was not due until July 21, and he was "GONE HAVE THE PHONE BEFORE THEN End of Discussion." Jenkins did not receive the phone nor any payment by the 21st and had to pay $634 for it. He contacted the police on July 29, 2021, waiting until then in order to give Powell a chance to pay for the phone in full so that it would not be reflected on his Boost Mobile account. The court received into evidence a Boost Mobile receipt from June 24, 2020, for the sole purpose of showing that Jenkins had provided the police with documentation of a phone payment to Boost Mobile.

¶ 7   Although Jenkins and Powell had a sexual "interaction" when she came to his house at 1:30 in the morning, they never dated and were not in a "relationship." She did not break up with him as they were never in a relationship.

¶ 8   On cross-examination, Jenkins acknowledged that he pleaded guilty to retail theft in 2012, for which he was sentenced to 300 days in jail, and pleaded guilty to felony retail theft in 2016, for which he served 12 months' probation. Jenkins further acknowledged on cross that he had contacted Powell via Facebook in March 2020, trying to locate her ex-boyfriend, who was a friend of his; he did not recall whether he contacted her on specific subsequent dates prior to June 19, 2020, when she came to his house with Dominique.

¶ 9   Detective Nicholas Richards of the Zion Police Department testified that during his investigation, he spoke with Jenkins, who gave him records, including a screen shot from a Fed Ex delivery of a cell phone. Detective Richards then submitted record requests for the cell phone number and reached out to Powell by telephone. Powell told him that Jenkins, with whom she had a prior relationship, purchased the cell phone for her as a gift; he made an initial payment of $100, and she took over payments from there. She acknowledged that she currently had the phone.

¶ 10   From Jenkins's records and company records, the detective learned that the cell phone was ordered under Jenkins's Boost Mobile account; the name on the cell phone order confirmation was misspelled as "Dewayne Jenkins"; and the phone was sent to Powell's home address and transferred to a T-Mobile account established in Powell's name on June 24, 2020. After concluding his investigation, Detective Richards met with Powell at her home and issued a citation for theft.

¶ 11   On cross-examination, Detective Richards testified that Powell told him that she had recently broken up with Jenkins and that he continued to harass her.

¶ 12    Ashaunti Powell testified that she is 21 years old and has a 3-month-old child; neither Jenkins nor his predecessor boyfriend is the father. She was introduced to Jenkins in 2019 through an ex of hers. She was 20 years old when Jenkins reached out to her through Facebook, messaging or phoning her from March into May 2020, when she finally responded. One afternoon in early May 2020, Jenkins picked her up, took her to his house and gave her oral sex. In the following days they had sex three or four times a week, and their sexual interaction turned into a relationship. She regularly communicated with him through texting. He did not give her gifts but gave her "money all the time to help me like pay my bills and stuff."

¶ 13    When Powell told Jenkins that an "ex" had broken her cell phone, Jenkins said they would get her a new one. They ordered the subject cell phone "via cash app" using her card. The phone was purchased under her name; she made the payments on it after it was delivered.

¶ 14    She and Jenkins picked up the phone at her house on June 24, 2020, then went back to his house. A photo was received into evidence that, according to Jenkins, was taken the day she got the phone and depicted Jenkins with her leg in his lap. Text messages were also received into evidence showing that she and Jenkins texted on June 27, 2020, about picking her up from work.

¶ 15    Their relationship ended toward the end of July. She broke up with him, and when he became "obsessive" about contacting her, she changed her phone number.

¶ 16    The trial court denied Powell's motion for a directed verdict. The jury found her guilty of theft as charged, and the court sentenced her to a year of supervision, payment of $75 in fines and $600 in restitution, and 30 hours of public service. Following the denial of her posttrial motion, Powell appealed.

¶ 17                                    II. ANALYSIS

¶ 18                    A. Elements of Theft Proven Beyond a Reasonable Doubt.

¶ 19    Powell argues that she was not proven guilty beyond a reasonable doubt. Specifically, she contends that (1) the State failed to prove that the cell phone belonged to Jenkins, and (2) Jenkins's testimony was not credible and there was no evidence presented to corroborate his testimony.

¶ 20    When an appellate court reviews the sufficiency of the evidence, the relevant question is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *People v. Cooper*, 194 Ill.2d 419, 430–31 (2000). All reasonable inferences from the evidence must be allowed in favor of the State. *People v. Gonzalez*, 239 Ill.2d 471, 478 (2011). This standard of review applies whether the evidence is direct or circumstantial. *People v. Tenney*, 205 Ill. 2d 411, 428 (2005).

¶ 21    The trier of fact determines the witnesses' credibility, weighs the evidence, draws inferences, and resolves any conflicts or inconsistencies in the evidence. *People v. Ortiz*, 196 Ill. 2d 236, 259 (2001). The trier of fact also resolves conflicts in the evidence. *Tenney*, 205 Ill. 2d at 427. A reviewing court will not substitute its judgment for that of the trier of fact on issues of the weight of the evidence or the credibility of the witnesses. *People v. Rojas*, 359 Ill. App. 3d 392, 398 (2005).

¶ 22    Powell was charged under 720 ILCS 5/16-1(a)(1)(A) (West 2020), which provides: "A person commits theft when he or she knowingly obtains or exerts unauthorized control over property of the owner***and***intends to deprive the owner permanently of the use or benefit of that property." The jury was accordingly instructed that the State had to show (1) Jenkins was the owner of the phone, (2) Powell knowingly obtained unauthorized control over the phone, and (3) Powell intended to permanently deprive Jenkins of the use and benefit of the phone. The State

charged Powell with a Class A demeanor, appropriate where the value of the stolen property does not exceed $500. *Id.* 5/16-1(b)(1).

¶ 23    Powell's credibility and weight and sufficiency of the evidence arguments against Jenkins address functions of the jury and not of this court. *Tenney*, 205 Ill. 2d at 428. Viewing the evidence in the light most favorable to the State, we determine that rational jurors could have found beyond a reasonable doubt that the cell phone belonged to Jenkins. It was purchased with his money via his Boost Mobile account, and he testified that he paid the entire sum through monthly payments. Powell's assertion that she made the payments after Jenkins's initial payment of $100 and after she switched to a "whole new account" with T-Mobile did not contradict Jenkins's testimony: the T-Mobile account statement she provided as evidence failed to show that any of her payments had been for the physical phone rather than merely for the service provided through T-Mobile. Additionally, she confirmed that she made no payments on Jenkins's Boost Mobile account.

¶ 24    The jury also had reason to believe Powell knew her control over the phone was unauthorized. First, she testified that she never told Jenkins she would give him his phone back but acknowledged on cross-examination that she had texted him on July 2, 2020, stating that the bill was not due until July 21 and he would have the phone back before then. (We note that this text message exchange also corroborated Jenkins's testimony that he was willing to let the theft go if Powell made restitution.) Second, Jenkins name was misspelled on the order confirmation. If Jenkins had ordered the phone, as Powell claimed, it is reasonable to expect that he would have spelled his name correctly. The misspelling is also inconsistent with Powell's claim that they were in a relationship. Finally, even if they were in a relationship, which Jenkins repeatedly denied, being in a relationship is not effective evidence that Jenkins gave the phone to her as a gift.

¶ 25    As to the final element of the crime—the intention to permanently deprive Jenkins of the use and benefit of the phone—Powell texted Jenkins that she was not going "to pay no phone off," acknowledged that she remained in possession of the phone, and did not deny that Jenkins never received the phone nor payment for it.

¶ 26    We conclude that the jury's verdict was supported by sufficient evidence of each element of theft.

¶ 27                    B. Admissibility Determination

¶ 28    Powell also argues that the trial court erred by not admitting into evidence purported Facebook messaging and telephone contact between Powell and Jenkins beginning in March 2020 and continuing into June 2020. Powell asserts that the exhibit would have corroborated her testimony that the parties were in a relationship and undermined Jenkins's credibility in claiming that the phone was stolen.

¶ 29    A determination of the admissibility of evidence is in the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. *People v. Pikes*, 2013 IL 115171, ¶ 12. Under the abuse of discretion standard, the appellate court owes deference to the trial court's ability to evaluate the evidence's impact on the jury. *People v. Donoho*, 204 Ill. 2d 159, 186 (2003). The threshold for finding an abuse of discretion is a high one and will not be overcome unless it can be said that the trial court's ruling was arbitrary, fanciful, or unreasonable, or that no reasonable person would have taken the view adopted by the trial court. See *In re Leona W.*, 228 Ill. 2d 439, 460 (2008); *Donoho*, 204 Ill. 2d at 182. Reasonable minds can disagree about whether certain evidence is admissible without requiring a reversal of a trial court's evidentiary ruling under the abuse of discretion standard. *Donoho*, 204 Ill. 2d at 186.

¶ 30    Defense counsel conceded at trial that there was "nothing substantive in the [Facebook] messages" and that their only purpose was to undermine Jenkins's credibility and theory of the case by showing that a relationship had existed. We note that Powell testified extensively about the existence of a relationship, including testimony, corroborated by an exhibit, that she and Jenkins texted on June 27, 2020, about Jenkins picking her up from work. Jenkins also acknowledged having a physical romantic encounter with Powell. Additional—and non-substantive—evidence about the parties' relationship would have been cumulative and, more importantly, misleading. Whether a relationship existed has no probative value in determining the elements of theft and the refusal to pay for or return the phone. The extent to which the parties were in a relationship is irrelevant and collateral to whether the elements of theft were satisfied.

¶ 31    We determine that the trial court acted within its discretion in blocking the admission of the Facebook pages.

¶ 32                              B. Restitution Determination

¶ 33    Finally, Powell challenges the court's sentencing order requiring that she pay $600 in restitution where there was no evidence presented to verify the amount Jenkins was out and the conviction was for theft of less than $500.

¶ 34    "Generally, to preserve an issue for appellate review, a party must raise the issue before the trial court and in a posttrial motion." *People v Colyar*, 2013 IL 111835, ¶ 27; see also *People v. Oshana*, 2012 IL App (2d) 101144, ¶ 44 (applying the rule to restitution ordered as part of a sentence). Here, Powell failed to preserve the issue for appeal by failing to object during trial or to raise the issue in a posttrial motion; accordingly, she has forfeited this point.

¶ 35    Forfeiture aside, we note that value is not an essential element of theft; the value of the property involved in the offense determines whether a theft is punished as a felony or a

misdemeanor. *People v. Jackson*, 99 Ill. 2d 476, 478-79 (1984); 720 ILCS 5/16-1(b) (West 2020). Restitution is a remedy distinct from whether the theft is punished as a felony or a misdemeanor and "has a well-established meaning in Illinois law: it refers to payment made to a victim in order to make the victim whole or to pay for the costs the victim incurred as a result of the defendant's actions." *People v. Oshana*, 2012 IL App (2d) 101144, ¶ 45.

¶ 36    "The source and type of information that the sentencing court may consider is virtually without bounds." *People v. Rose*, 384 Ill. App. 3d 937, 941 (2008). The evidence need only be reliable and relevant, a determination that is within the court's discretion. *Id.* Jenkins testified without objection that he paid $634 for the cell phone. We conclude that there was sufficient evidence for the court to find that the value of Jenkins's loss was at least $600. Compare *People v. Birge*, 2012 IL 125644, ¶ 49 (vacating and remanding for new hearing on restitution where no numerical evidence of loss was presented). Because the court did not abuse its discretion, we affirm the restitution award.

¶ 37                    III. CONCLUSION

¶ 38    For the reasons stated, we affirm the judgment of the circuit court of Lake County.

¶ 39    Affirmed.